**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE MEDICINES COMPANY, ) <br> ) <br> ) <br>              Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> ) <br> MYLAN INC., MYLAN ) <br> PHARMACEUTICALS INC., and ) <br> BIONICHE PHARMA USA, LLC, ) <br> ) <br> ) <br>              Defendants. ) | Case No. 11 C 1285 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff's motion to compel Defendants to produce additional witnesses pursuant to Federal Rule of Civil Procedure ("Rule") 30(b)(6). (R. 159, Mot.) Specifically, Plaintiff seeks to compel Defendants to produce (i) a Rule 30(b)(6) witness on topic nos. 4 and 23-25, and (ii) a prepared Rule 30(b)(6) witness on topic Nos. 12 and 28-30. For the following reasons, the Court denies Plaintiff's motion.

**BACKGROUND**

**I.    Patents-in-Suit**

Plaintiff The Medicines Company ("TMC") brought this lawsuit against Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and Bioniche Pharma USA, LLC (collectively, "Mylan"), asserting that Mylan infringed U.S. Patent Nos. 7,582,727 (the "'727 Patent") and 7,598,343 (the "'343 Patent," and collectively with the '727 Patent, the "patents-in-suit"). The patents-in-suit pertain to pharmaceutical formulations of bivalirudin and the processes of making

bivalirudin. (R. 1, Compl.) Bivalirudin is the active ingredient in Angiomax®, which is an anticoagulant drug used in patients with unstable angina who are undergoing percutaneous transluminal coronary angioplasty. (*Id.* ¶¶ 11, 13.) TMC markets Angiomax®. (*Id.* ¶ 13.)

TMC alleges that Mylan, before the expiration of the patents-in-suit, submitted Abbreviated New Drug Application ("ANDA") No. 202471 to the U.S. Food and Drug Administration ("FDA"), seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of its generic Angiomax® product. TMC avers that Mylan's ANDA No. 202471 infringes certain claims of the patents-in-suit. The Court presumes familiarity with the additional factual background of this litigation, and incorporates herein by reference the background information set forth in the Court's written opinion dated August 6, 2012. (R. 119.)

## II.     Current Discovery Dispute

On January 19, 2012 TMC served 105 deposition topics on Mylan (35 on each party). (R. 175, Resp. at 2.) Mylan served its objections to these topics in February 2012. (*Id*.) The parties met and conferred in February and April 2012 to discuss these topics and Mylan's objections. (*Id*.) Mylan confirmed its objections and refused to produce witnesses with respect to certain topics, including topics 4 and 23-25. (*Id*; Mot. at 2; R. 177-9, Ex. 9; R. 162-4, Ex. 4.) Mylan designated four Rule 30(b)(6) witnesses and provided them for depositions in May and August 2012. (*Id*; R. 177-12, Ex. 12; R. 177-13, Ex. 13; 177-14, Ex. 14; 177-15, Ex. 15.) On July 16, 2012, TMC sought additional witnesses. (*Id*; R. 177-16.) Mylan reiterated its objections via letter on July 18, 2012. (*Id*. at 3; R. 177-17, Ex. 17.) TMC sent another letter requesting additional witnesses on July 20, 2012. (*Id*; R. 177-19, Ex. 19.) TMC deposed two of

Mylan' Rule 30(b)(6) witnesses on August 21-22, 2012. (*Id.*; Mot. at 4-5.) Defendants continued to object to topic nos. 4 and 23-25, as well as others. (*See, e.g.*, R. 177-20, Ex. 22.)

Initially, on August 6, 2012, the Court set September 18, 2012 as the close of fact discovery. (R. 120) On August 30, 2012, the Court granted the parties' joint motion to amend the scheduling order thereby extending the deadline for fact discovery to November 19, 2012. (R. 123.) On November 15, 2012, TMC filed the present motion to compel. On November 16, 2012, the parties jointly moved to extend the deadline again, citing difficulties scheduling depositions, in part because of challenges created by Hurricane Sandy. (R. 171.) On November 19, 2012, the Court granted this joint motion and again extended the fact discovery deadline to January 11, 2013. (R. 173.)

## LEGAL STANDARD

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule

26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't*, 535 F.2d 621, 629 (7th Cir. 2008).

## ANALYSIS

**I.     Topic Nos. 4 and 23-25**

TMC argues that Mylan must produce Rule 30(b)(6) witnesses to testify on topic nos. 4 and 23-25, which Mylan objects to on relevance, privilege and cumulative grounds.

Although the Federal Rules of Civil Procedure place no time limit on filing a motion to compel within the discovery period, district courts may deny motions as untimely due to unexplained or undue delay or when the late motion will require an extension of the discovery period. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005); *see also Grassi v. Info. Res., Inc.*, 63 F.3d 596, 604 (7th Cir. 1995) (affirming denial of untimely motion to compel discovery). This power arises from the "extremely broad discretion in controlling discovery," and the Court may exercise this discretion to deny a motion to compel as untimely. *In re Sulfuric Acid*, 231 F.R.D. at 336; *see Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Notwithstanding this discretion, "motions to compel filed after the close of discovery are almost always deemed untimely." 231 F.R.D. 331, 332 (N.D. Ill. 2005) (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001)). *But see Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000) (allowing motion to compel after close of discovery upon counsel's showing of a "persuasive justification" for the delay).

Here, Mylan first objected to providing any witnesses to testify regarding TMC's topics nos. 4 and 23-35 in February 2012. TMC, however, did not file a motion to compel such witnesses until November 15, 2012, approximately nine months later and four days before the scheduled close of fact discovery, which initially was set to close September 18, 2012. Because of the Court's repeated extensions of the discovery schedule, TMC technically filed its motion to compel before the close of fact discovery. This technicality, however, does not save its untimely motion.

Notably, TMC has appeared before the Court on many occasions since first obtaining Mylan's objections to its deposition requests, but not made any mention of needing additional Rule 30(b)(6) witnesses until it filed this motion. Indeed, TMC did not indicate any such need in either of its joint motions to extend the fact discovery deadline. Although this Court appreciates the parties' efforts to meet and confer before hastily asking the Court to resolve these discovery issues, TMC unreasonably delayed in seeking the Court's involvement after months of steadfast and repeated objections from Mylan.

Indeed, TMC offers no explanation for its delay.[1] "When no effort was made to present

---

[1] On November 30, 2012, TMC, via letter, argued that documents that Mylan produced on November 21, 2012 warrant production of Rule 30(b)(6) witnesses on topic nos. 4 and 23-28, and also support TMC's contention that Mylan should re-produce witnesses on other topics. (R. 179, Pl.'s Nov. 30 Ltr.) TMC's arguments, however, are misguided. First, because TMC obtained this document production after it filed its motion to compel, these documents do not justify its many month delay in addressing this issue. Second, TMC failed to meet or confer with Mylan prior to filing its letter with the Court. (R. 180, Defs.' Dec. 3 Ltr.) If TMC had conferred with Mylan, Mylan would have assured TMC that the November 20th production contained cover emails to some previously produced documents, as well as a re-production of those previously produced documents. (*Id*. at 1.) According to Mylan, only approximately forty documents had not previously been produced. (*Id*. at 2.) TMC has not, however, offered any argument that these few documents contained significant new, not previously disclosed information that necessitates production of additional Rule 30(b)(6) witnesses that it did not

the issue to the court in a timely fashion and when no effort was made to explain why the requested discovery could not have taken place within the original discovery period, the district court may deny a motion to compel." *Schaefer v. Bezy*, 435 Fed. Appx. 550, 556 (7th Cir. 2011) (citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056-57 (7th Cir. 2000) (internal quotation omitted). Because of TMC's unreasonable and inexplicable delay in the face of Mylan's long-standing and unwavering objections to topic nos. 4 and 23-25, the Court denies TMC's motion to compel with respect to topic nos. 4 and 23-25.

## II. Topic Nos. 12 and 28-30

TMC also argues that Mylan should re-produce witnesses designated for topic nos. 12 and 28-30 or should produce new witnesses prepared to testify on these topics because Mylan failed to sufficiently prepare the previously designated witnesses.

Topic nos. 12 and 28-30 seek Rule 30(b)(6) testimony on the following subjects:

**Topic 12:** The composition of Mylan's Bivalirudin Drug Product, including (i) the identity of each ingredient in the formulation; (ii) the amount of each ingredient in the formulation; (iii) the function/purpose of each ingredient in the formulation; (iv) the identity of all persons involved in the manufacturing process; and (v) the development of any specification for Mylan's Bivalirudin Drug Product;

**Topic 28:** Any communications between Mylan and Bioniche concerning Bivalirudin, any Bivalirudin Drug Product, Mylan's ANDA and/or any Bivalirudin Litigation;

**Topic 29:** The relationship or agreement between Mylan and Biocon, InnoPharma, AmbioPharm and/or ChemWerth referring or relating to Bivalirudin; and

**Topic 30:** Any communications between Mylan and Biocon, InnoPharma, AmbioPharm and/or ChemWerth concerning Bivalirudin, any Bivalirudin Drug Product, Mylan's ANDA and/or any Bivalirudin Litigation.

(Mot. at 3.) On August 21-22, 2012, Mylan presented Dr. Leena Selvaraj and Ms. Juile Simon

---

previously seek the Court to compel.

to testify on these topics. (Resp. at 10.)

### A. Dr. Selvaraj's Testimony on Topic Nos. 12 and 28-29

According to TMC, when it tried to question Dr. Selvaraj on her designated topics, she revealed "that she was neither knowledgeable on nor had done nothing to prepare for [these topics]." (Mot. at 4.) Regarding topic no. 12, TMC cites to two specific questions which Selvaraj could not answer. (Mot. at 10.) Additionally, when TMC's attorneys asked Dr. Selvaraj if she had done anything to prepare for topic no. 12, she responded "No." (Mot. at 10 (citing Ex. 16, Selvaraj Dep. 95:13-21.) Similarly, regarding topic no. 29, TMC cites to one series of questions where Dr. Selvaraj stated that she did not do anything to prepare for topic 29, including review any agreements between Mylan and the third-parities implicated by topic no. 29. (Mot. at 12 (citing Ex. 16, Selvaraj Dep. 194:9-17).) Furthermore, Dr. Selvaraj testified that she did not prepare to testify about topic no. 30 and could not testify to any communications with the relevant third parties except those she herself had. (Mot. at 13-14 (citing Ex. 16, Selvaraj Dep. 196:15-197:15, 198:22-199:14.) Based on these answers, TMC argues that Mylan failed to sufficiently prepare Dr. Selvaraj and therefore must provide an additional, better prepared witness on topic nos. 12 and 28-29.

The Court, however, agrees with Mylan that, rather than probe Dr. Selvaraj's knowledge on the designated topics, TMC's counsel asked broad, inconclusive questions about her preparation as it related to specific topic numbers. (*Id.* at 10-11.) Dr. Selvaraj testified, for example, that she would have been copied on nearly all communications with Biocon and InnoPharma, except those regarding business topics that Ms. Simon, who testified the day after Dr. Selvaraj, may have handled. (Resp. at 13; R. 178-1, Ex. 20 at 194:18-200:24.) TMC's

counsel, however, did not follow-up with questions based on Dr. Selvaraj's professed knowledge, but instead simply asked what she had done to prepare. (*Id.*) Indeed, TMC provides examples of only a few specific questions which Dr. Selvaraj could not answer. Such minimal citation does not show that Dr. Selvaraj thwarted efforts by TMC to take full advantage of her as a Rule 30(b)(6) witness. Rather, TMC has merely highlighted a few lapses in Dr. Selvaraj's testimony in hopes of obtaining a proverbial second bite at the apple with the benefit of hindsight months later.

Furthermore, although a corporation must "make a conscientious good faith effort to designate a person with knowledge on the designated topics" and "has a duty to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by the discovering party," it is unclear that Mylan possessed additional knowledge it should have conveyed to Dr. Selvaraj to adequately prepare her to testify. *Aldridge v. Lake County Sheriff's Office*, No. 11 C 3041, 2012 WL 3023340, at *4 (N.D. Ill. July 24, 2012) (internal quotations comitted). Indeed, Mylan chose Dr. Selvaraj because she "is the most knowledgeable person at Mylan with respect to Topic 12 and some portions of 28-30." (Resp. at 10.) In fact, in some instances, the corporation's knowledge is coextensive with Dr. Selvaraj's knowledge. According to Mylan, for example, "Dr. Selvaraj is the Mylan employee with the technical knowledge of its bivalriduin product" and her personal knowledge with respect to topic no. 12 constitutes the extent of Mylan's information. (Resp. at 12.) Any additional knowledge on this topic, therefore, "is likely in the possession of Biocon and InnoPharma," who developed Mylan's bivalriudin, not with anyone else at Mylan. (Resp. at 12.) Indeed, to assist TMC in obtaining additional information outside of Mylan's knowledge base, Dr. Selvaraj directed TMC to Bicon and

8

InnoPharma during her deposition. (Resp. at 12; R. 178-1, Ex. 20 at 73:18-76:21, 182:9-183:13.) In fact, TMC has scheduled the depositions of a Biocon witness and two InnoPhara witnesses. (Resp at 12 (citing R. 174, Joint Dep. Sched).) Rule 30(b)(6) only requires a corporate witness to "testify about information known or reasonably available to the organization," not to arm its witnesses with information outside of its corporate knowledge Fed. R. Civ. P. 30(b)(6).

Moreover, since Dr. Selvaraj possessed the extent of the corporation's knowledge on certain topics, Mylan could not have provided her with additional knowledge to "prepare" her, thereby making TMC's questions about her preparedness meaningless. The Court, therefore, agrees that "TMC is not entitled to a mulligan" to now ask the questions it failed to ask previously. (Resp. at 1.)

**B.     Ms. Simon's Testimony on Topic Nos. 28 and 29**

On the evening of August 21, 2012, Mylan designated Ms. Simon for portions of topic nos. 28 and 29, based on Dr. Selvaraj's testimony that day that Ms. Simon would have information relevant to portions of those topics. (Resp. at 15; R. 177-21, Ex. 23; R. 178-1, Ex. 20 at 193:6-25; 200:8-24.) Specifically, Mylan's counsel emailed TMC's counsel at 6:41 p.m. on August 21st describing the portions of topic nos. 28 and 29 on which Ms. Simon would testify. (R. 177-21, Ex. 23.) According to TMC, its counsel did not receive this email until the morning of August 22nd. (Mot. at 15.)

Prior to this email, Mylan had not informed TMC that Ms. Simon would testify at all regarding topic no. 28, other than Dr. Selvaraj alerting TMC during her deposition that Ms. Simon might have relevant information. (*Id*.) TMC, therefore, argues that it had insufficient

time to prepare for Ms. Simon's deposition on topic no. 28. Notably, however, TMC prepared to question Dr. Selvaraj on topic no. 28. TMC, therefore, had sufficient time to prepare questions for one corporate witness testifying about topic no. 28 (Dr. Selvaraj) and, instead of having one corporate witness, had the opportunity to question two. TMC has not explained why it could not prepare for Ms. Simon's Rule 30(b)(6) testimony regarding her corporate knowledge. It also has not presented examples of any questions that it would have presented to Ms. Simon if it had been given additional time to prepare.

TMC also argues that, on the eve of Ms. Simon's deposition, Mylan improperly limited Ms. Simon's testimony on topic no. 29 to issues relating to finances. (Mot. at 15; R. 177-21, Ex. 23.) TMC, however, had the opportunity to question Dr. Selvaraj regarding the other areas of topic no. 29. Moreover, because TMC presumably had prepared to question Ms. Simon on the entirety of topic no. 29 until notified of the limitation, TMC's argument that its counsel did not have sufficient time to prepare to question Ms. Simon on the finances issues in topic no. 29 falls flat.

Additionally, TMC had not alleged that it would have asked Dr. Selvaraj certain questions on topic no. 29 had it known Mylan was limiting Dr. Simon's testimony. Indeed, despite arguing that Mylan has not offered a witness to testify on the full scope of topic no. 29, TMC does not specify any particular issue or questions within the scope of topic no. 29 which it did not have the opportunity to pursue between the two witnesses designated for topic no. 29.

Moreover, TMC proceeded with the deposition of Ms. Simon without objecting to the August 21st email designating her to testify on portions of topic no. 28 and limiting her testimony on topic no. 29. (Resp. at 15.) Indeed, despite completing Ms. Simon's deposition on

August 22nd, TMC did not inform Mylan of any issue with Ms. Simon's designation until September 4, 2012. (Resp. at 15; R. 177-22, Ex. 24.) TMC did not raise this issue with the Court until November 15, 2012 via the current motion. The Court will not reward TMC's repeated delay in addressing its concerns either with Mylan or with the Court by requiring Mylan to produce additional witnesses.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff TMC's motion to compel in its entirety.

**Date: January 9 , 2013**

                                    **ENTERED**

                                    AMY J. ST. EVE
                                    United States District Court Judge