**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE MEDICINES COMPANY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 11-cv-1285 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| MYLAN INC., et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and Bioniche Pharma USA, LLC (collectively, "Mylan" or "Defendants") move the Court for bill of costs for a sum totaling $276,193.89 after six years of litigation over two patents.  (R. 694.)  Plaintiff The Medicines Company ("TMC" or "Plaintiff") requests that each party bear its own costs or in the alternative that the Court award no more than $88,315.29 in costs.  (R. 705.)  For the following reasons, the Court awards Defendants costs in the amount of $217,632.88.

## BACKGROUND

The Court assumes the parties' familiarity with the lengthy proceedings in this case. TMC brought this lawsuit on February 23, 2011, for patent infringement for United States Patent Nos. 7,582,727 ("the '727 patent") and 7,598,343 ("the '343 patent") under the Hatch-Waxman Act.  (R. 1.)  On June 21, 2013, Defendants moved for summary judgment of non-infringement or, in the alternative, invalidity.  (R. 275.)  The Court granted Defendants' motion for summary judgment of non-infringement with respect to the '343 patent, but denied it with respect to the '727 patent.  (R. 309.)  The Court also denied Defendants' alternative motion for summary

judgment of invalidity with respect to the '727 patent, however it granted Defendants' motion for summary judgment on TMC's claim for willful infringement. (*Id.*)

The Court held a six-day bench trial from June 9 to June 18, 2014, on TMC's infringement claims and Mylan's counterclaims regarding the '727 patent. (R. 545, 546, 548, 550, 551, 552.) The Court found that: (1) Mylan had failed to prove by clear and convincing evidence that claims 1-3, 7-10, and 17 of the '727 patent are invalid or unenforceable; and (2) Mylan's proposed bivalirudin drug product infringed claims 1-3, 7-10, and 17 of the '727 patent. (R. 590.) The judgment was entered on October 27, 2014, (R. 591.) and amended on November 12, 2014 (R. 615.).

Defendants subsequently appealed and Plaintiffs cross-appealed. The Federal Circuit reversed the Court's judgment of infringement with respect to the '727 patent, dismissed TMC's cross-appeal regarding the '343 patent, and vacated the Court's injunction against Mylan. (R. 665; *see TMC v. Mylan*, Nos. 15-1113, 15-1151, 15-1181 (Fed. Cir. July 29, 2015), Dkt. No. 64.)

Before the Court is Defendant's motion for bill of costs, seeking $276,193.89 after six years of litigation over the two patents. (R. 694.) Plaintiff opposes the motion and requests either that each party bear its own costs or in the alternative that the Court award no more than $88,315.29 in costs. (R. 705.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1); *see also Richardson v. City of Chicago*, 740 F.3d 1099, 1102 (7th Cir. 2014) ("Rule 54 entitles prevailing parties to recover their costs."); *Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 4506071, *1 (N.D. Ill. Aug. 23, 2013). The

list of recoverable costs pursuant to 28 U.S.C. § 1920, includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees under 28 U.S.C. § 1923, and (6) compensation for court-appointed experts and interpreters. *Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012). *See also Thompson v. Vill. of Monee*, 2016 WL 128005, *1 (N.D. Ill. Jan. 12, 2016), *appeal dismissed* (Feb. 26, 2016) (referencing *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *Republic Tobacco Co. v. North Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007)).

Rule 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party," *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 666 (7th Cir. 2014), but gives "the district judge discretion to decide whether an award of costs is appropriate." *Chesemore v. Fenkell*, 829 F.3d 803, 816 (7th Cir. 2016). *See also U.S. Neurosurgical*, 572 F.3d at 333; *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006) (Rule 54(d)(1) "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise.").

"Taxing costs against the non-prevailing party requires two inquiries—whether the cost is recoverable and whether the amount assessed is reasonable." *Artunduaga v. Univ. of Chicago Med. Ctr.*, 2017 WL 1355873, *1 (N.D. Ill. Apr. 13, 2017). *See also U.S. Neurosurgical, Inc.*, 572 F.3d 325 at 333; *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (per curiam). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs.of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009); *see also Little*, 514 F.3d at 702. Again, district courts have considerable discretion in determining whether a

particular cost is reasonable and necessary. *See Myrick*, 764 F.3d at 666; *U.S. Neurosurgical, Inc.*, 572 F.3d at 333.

A bill of costs must be verified per 28 U.S.C. § 1924: "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." Typically, parties file a Form AO 133 "Bill of Costs," which includes a sworn affidavit, and both an itemization and documentation of the requested costs. Courts analyze costs based on category and review corresponding documentation. *See, e.g.*, *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble, Co.*, 924 F.2d 633 (7th Cir. 1991) (Seventh Circuit requiring a bill of costs that provides "the best breakdown obtainable from retained records"); *Goldberg*, 2013 WL 4506071 at *6 (this Court reviewing itemized and documented costs).

## ANALYSIS

Before the Court is Defendant's motion for bill of costs, seeking $276,193.89 after six years of litigation over two patents. (R. 694.) Defendants assert that they are the prevailing party because they "won summary judgment of non-infringement of the '343 patent and secured a final judgment of non-infringement of the '727 patent from the United States Court of Appeals for the Federal Circuit, which reversed this Court's finding of infringement." (*Id*. at 1.) Mylan "seeks its taxable costs of $276,193.89 pursuant to Federal Rules of Civil Procedure 26(b)(4)(E) and 54(d)(1), 28 U.S.C. §1920, and Federal Rule of Appellate Procedure 39(e)." (*Id*.) Plaintiff opposes the motion and requests either that each party bear its own costs or in the alternative that the Court award no more than $88,315.29 in costs. (R. 705.)

## I.      Prevailing Party

Plaintiff argues that the Court should exercise its discretion and not award costs because "Mylan lost nearly every counterclaim." (R. 705 at 5-7.) According to TMC, most of Defendants' requested "costs relate to Mylan's unsuccessful claims." (*Id*. at 7.) TMC further argues that a court may weigh the complexity of a case or the closeness of the issues when determining costs. (*Id*. at 7-8.)

For the purposes of Rule 54, the prevailing party is "the party who prevails as to the substantial part of the litigation." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985); *see also Cascade Die Casting Grp., Inc. v. Arwood Corp.*, 923 F.2d 856, *6 (7th Cir. 1991) (quoting *First Commodity Traders, Inc*. with approval). The party does not have to prevail with regard to all of its claims—it must win only a substantial part of the litigation. "A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. of Elec. Workers,* 573 F.3d 523, 525 (7th Cir. 2009); *see also Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996) ("the 'prevailing party' is the party who prevails as to the substantial part of the litigation"). "[A] determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided." *Republic Tobacco Co*., 481 F.3d at 446 (citation omitted).

Defendants are the prevailing party in the litigation. Their rights have been vindicated on both patents at the close of the lawsuit. They are thus entitled to costs per Rule 54(d)(1).

## II.     Costs for Clerk and Marshal Per 28 U.S.C. § 1920(1) & Appeal Filing Fee Per Fed.R.App.P. 39(e)

Mylan seeks a total of $1,076.00 in costs associated with service fees pursuant to 28 U.S.C. § 1920(1) and for the appeal filing fee under Fed.R.App.P. 39(e). Service fees may not

exceed the amount charged by the United States Marshal Service, which was a rate of $55.00 per hour at the time of the litigation, as well as any travel costs and out-of-pocket expenses. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *see also* 28 C.F.R. § 0.114(a)(3) (establishing fees for service of summons; using the rates in effect from December 19, 2008, to October 29, 2013). For nine of the eleven subpoenas, Defendants claim $55.00 per subpoena. They also claim $23.50 and $52.50 for two other subpoenas for a total cost of $571.00. Mylan also requests the $505 appeal filing fee under Fed.R.App.P. 39(e)(4), which allows costs for "the fee for filing the notice of appeal."

Exhibit 2 contains Defendants' documentation for the subpoenas and appeal fee. (R. 695-2.) Defendants provide two internal Perkins Coie emails discussing service, nine invoices for subpoenas, and an email confirmation from a government entity for the appellate fee. Plaintiff points out that internal emails cannot take the place of invoices while Defendants underscore that six years have passed from the date of service. The Court finds that the 11/14/2011 internal email from 1:42PM does not adequately document or substantiate the subpoena fee—the email between two Perkins Coie employees does not even specify on whom service was made. (*Id.* at 3.) The Court will, however, accept the other internal email from 11/14/2011 from 2:03PM. (*Id.* at 4.) While this is also an email between two Perkins Coie employees, it specifies the entity that will be served. The Court also accepts the nine subpoena invoices. The Court thus awards costs for ten of the eleven subpoenas in the amount of $516.00.

Plaintiff does not dispute the $505 appeal filing fee. The Court awards Defendants this cost under Fed.R.App.P. 39(e)(4). The Court therefore awards Defendants a total of $1,021.00 for costs under 28 U.S.C. § 1920(1) and Fed.R.App.P. 39(e).

**III.     Costs for Court Reporter and Transcripts Per 28 U.S.C. § 1920(2)**

Mylan seeks a total of $78,348.38 in § 1920(2) costs: $38,686.30 in deposition transcript fees, $29,846.00 in deposition video-recording fees, and $9,816.08 in trial transcript fees. Plaintiff argues that these costs are excessive and should be reduced.

Courts award costs for court reporting fees pursuant to § 1920(2), which "allows parties to recover only the transcript expenses that can be considered reasonable, that is, '[f]ees for ... transcripts necessarily obtained for use in the case.'" *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014) (quoting 28 U.S.C. § 1920(2)). Courts award deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition. *See Little,* 514 F.3d at 702.

Under Northern District of Illinois Local Rule 54.1(b), the costs of a transcript shall not exceed the regular copy rate established by the United States Judicial Conference. *See* N.D.Ill.L.R. 54.1(b). Judicial Conference rates for depositions conducted after November 1, 2007 are $3.65 per page for ordinary transcripts (and $0.90 for the first copy), $4.25 per page for fourteen day transcripts (and $0.90 for the first copy), $4.85 per page for seven day transcripts (and $0.90 for the first copy), $6.05 per page for daily transcripts (and $1.20 for the first copy), and $7.25 per page for hourly transcripts (and $1.20 for the first copy). *See* http://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo.

In addition, attendance fees are recoverable under § 1920(2). *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 727 (7th Cir. 2008); *Little,* 514 F.3d at 701–02. These fees include $110.00 for one half-day (four hours or less) and $220.00 for a full day. *See Gracia v. Sigmatron Int'l, Inc.,* No. 11 C 7604, 2016 WL 6892861, at *6 (N.D. Ill. Nov. 23, 2016).

## A. Deposition Transcript Fees

Defendants request $38,686.30 in deposition transcript fees. Plaintiff disputes Mylan's need for rough transcripts and argues that the deposition exhibits were just extra copies. TMC requests that the Court reduce the fees by those two cost categories to $27,090.30.

With regard to rough transcripts, Mylan does not cite any authority to support its request, merely stating that "rapid turn-around" motion practice necessitated such transcripts. (R. 712 at 8.) The Court's rules allow for an original with one copy for the attorney and one copy for a court. *See* LR 54.1 ("Except as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel and, for depositions, the copy provided to the court shall be allowed."). "The costs of additional services, beyond the regular transcription service, are not recoverable when incurred solely for the convenience of counsel." *DSM Desotech, Inc. v. 3D Sys. Corp*., 2013 WL 3168730, *4 (N.D. Ill. June 20, 2013) (citing *Spatz v. Microtel Inns and Suites Franchising Inc.*, 2012 WL 1587663 (S.D. Fla. May 4, 2012); *Hunt Constr. Group, Inc. v. Allianz Global Risks U.S. Ins. Co.*, *6, 2007 WL 2286128 (S.D. Ind. Aug. 7, 2007)). Generally, condensed transcripts, electronic copies, etc. are considered to be obtained for the convenience of counsel. *Id*. (citing *e.g.*, *Engate, Inc. v. Esquire Deposition Servs. LLC*, 2006 WL 695650, *4 (N.D. Ill. Mar. 13, 2006)). "This is particularly true where the parties also obtained stenographic transcripts of depositions for which ASCII diskettes or videotapes were produced." *Engate, Inc.*, 2006 WL 695650 at *4 (citing *e.g.*, *Fait v. Hummel*, 2002 WL 31433424, *2 (N.D. Ill. Oct.30, 2002); *EEOC v. Yellow Freight Sys., Inc.*, 1999 WL 965854, *3 (N.D. Ill. Oct.14, 1999); *see also, Barber v. Ruth,* 7 F.3d 636, 645 (7th Cir.1993)).

Here, Mylan seeks to recover costs of "rough draft" transcripts in addition to the original and certified transcripts allowed by the local rule. The Court finds that these additional services were largely for the convenience of counsel and are not recoverable. Accordingly, the Court reduces Mylan's requested costs by $8,003.00 for rough transcripts.

With regard to exhibits, "courts in this district have concluded that these costs are recoverable because…exhibits are essential to understanding the content of a deposition, especially in a complex and heavily litigated case." *See, e.g.*, *Harkins v. Riverboat Servs., Inc.*, 286 F.Supp.2d 976, 980 (N.D. Ill. 2003); *see also AMC v. Intercontinental*, 2010 WL 4735760, *1 (N.D. Ill. Nov. 15, 2010). Plaintiff points out that these exhibits are possibly just convenience or extra copies. Defendants retort that the exhibits had to be reprinted with Bates stamps and that the court reporter retained the original copies. Neither of these circumstances, however, are compelling. Additionally, the invoices do not explain what services "exhibits" actually entail from a court reporter or what the rates are for these services. Because Mylan has not met the burden of proving these costs, the Court denies Mylan its exhibit fees of $3,593.00.

The Court awards Mylan $27,090.30 in total for deposition transcript fees, which is the $38,686.30 Mylan requested, minus the cost of rough transcripts ($8,003.00) and the cost of exhibits ($3,593.00).

### B. Deposition Video-Recording Fees

Defendants next request $29,846.00 in deposition video-recording fees, arguing that the depositions were necessary because they "were relied upon, presented at trial, and/or submitted to the Court." (R. 694 at 17.) Of that total sum, $17,822.50 is for video depositions of witnesses for this trial and $12,023.50 is for witnesses in the *Hospira* trial.

### 1. *Mylan* Trial

Defendants move for $17,822.50 in costs for video depositions for the trial in this case. Plaintiff argues that the Court should only award costs for the video depositions of "five individuals, resulting in a reduction of $12,622.50." (R. 705 at 19.) Defendants point to persuasive case law that awards video deposition fees for transcribed depositions where the other party has also obtained video recordings and when a witness is listed on the party's "may call" or "will call" witness lists. (R. 712 at 6-7.)

The Seventh Circuit has held that under Section 1920(2), "the costs of both video-recording and stenographic transcription" may "be taxed to the losing party." *Little*, 514 F.3d 699 at 702; *see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 2016 WL 316865, at *2 (N.D. Ill. Jan. 26, 2016); *In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *6 (N.D. Ill. Sept. 2, 2014). "[T]he standard is whether it was reasonably necessary for counsel to obtain both." *Text Messaging*, 2014 WL 4343286, at *6. "Costs associated with digitalization and synchronization of videotaped depositions may also be taxed." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 5008425, *3 (N.D. Ill. Oct. 20, 2011) (citing *e.g.*, *Specht v. Google Inc.*, 2011 WL 2565666, *2 (N.D. Ill. June 27, 2011); *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F.Supp.2d 1139, 1151 (N.D. Cal.2010).

Courts in this district have allowed a prevailing party to establish the reasonableness of obtaining a videotaped deposition in addition to a transcript under at least three circumstances. First, a party may tax costs for both a transcribed and recorded deposition "if it is uncertain whether the witness will appear for trial." *Artunduaga*, 2017 WL 1355873 at *2; *see also Oleksy v. Gen. Elec. Co.,* No. 06 C 1245, 2016 WL 7217725, *6 (N.D. Ill. Dec. 12, 2016). This is often the case when the witnesses are unavailable or outside of the Court's subpoena power.

*Artunduaga*, 2017 WL 1355873 at \*3.  Second, a party is justified in obtaining a video in addition to a transcript if the other side did so.  "Knowing that its opponent possesses video tapes of…depositions, it is reasonable and necessary for the party to obtain copies.  In such a hotly contested case, the party would be ill-advised not to do so."  *Intercontinental Great Brands LLC*, 2016 WL 316865 at \*2 (citing *Top Tobacco, L.P. v. N. Atl. Operating Co.*, 2007 WL 1149220, \*7 (N.D. Ill. Apr. 17, 2007)) (quotations removed).  Third, costs may be awarded for witnesses who appear on the "may call" or "will call" trial witness lists.  *LG Elecs.*, 2011 WL 5008425 at \*3-4.

Defendants do not avail themselves of the first rationale.  With regard to the second, TMC obtained both the transcript and the video deposition of all deposed witnesses with the exception of seven: Motheram (one deposition of many), Gezzar, Smith (one deposition of many), Krishna (one deposition of many), Salzberg, Kuzmich (one deposition of many), and Garman.  (R.623 at 10-11.)  With regard to the third justification, TMC's final witness list had three "will call" witnesses (Klibanov, Flammia, and Salzberg).  (R. 412-3 at 2.)  Their "may call" list had 14 witnesses (Hoch, Krishna, Kuzmich, Mossinghoff, Motheram, Musso, Nayak, O'Sullivan, Pejaver, Robins, Selvaraj, Sen, Simon, and Varden).  (*Id*. at 2-4.)  On the other hand, Mylan's "will call" list had 10 witnesses (Auslander, Linck, McKeague, Reginer, Krishna, Motheram, Musso, Green, Smith, McKinnon) and their "may call" list had 18 witnesses (Hoch, Nayak, O'Sullivan, Robins, Selvaraj, Pejaver, Sen, Simon, Sobecki, Talton, Varden, Flammia, Garman, Kuzmich, Leary, Wood, Gezzar, Savoy).  (R. 412-4 2-4.)  Mylan requests the fees for the video deposition of the following witnesses who were on neither party's list: Hofmann and Garman.  (R. 695-3 at 2.)  Plaintiff obtained Hoffman's video deposition.

Between the second and third rationales, Mylan has only failed to justify the costs of the deposition of witness Garman. Plaintiff did not request the video deposition of this witness and neither party put this witness on their trial call list. As such, the Court denies costs with regard to witness Garman ($542.50). The Court thus awards Mylan a total of $17,280.00 in video deposition fees of the $17,822.50 it requested.

### 2. *Hospira* Trial

Defendants move for $12,023.50 for the cost of video depositions from the *Hospira* trial. Defendants allege that TMC refused to produce the *Hospira* video depositions (although it did provide transcripts) and thus Mylan was forced to purchase the videos. (R. 694 at 17.) TMC countered that it provided transcripts to Mylan, that any party wishing to use videos for impeachment must pay for those videos itself, that Defendants ordered the *Hospira* videos after taking the deposition of those witnesses for the *Mylan* trial, and that Mylan only used one video deposition at trial. (R.705 at 19-20.) Plaintiff thus requests that the Court reduce Mylan's costs by $12,023.50, the full amount Mylan paid for the *Hospira* video depositions. (*Id*. at 20.) Mylan argues that transcripts do not preclude the award of fees for videos and that courts award costs based on facts known at the time, not based on what was actually used at trial. (R. 712 at 7-8.)

The requested *Hospira* depositions were all taken in 2011. (R. 695-3 at 3.) Defendants took the deposition of all of 9 of these witnesses between 2012 and 2013 for the *Mylan* case. (*Id*. at 2.) Yet Defendants requested the *Hospira* video depositions in 2014. (*Id*. at 40-52.) Defendants argue that they needed "to determine the witnesses' demeanor and credibility." (R. 694 at 17.) It appears to the Court that the *Hospira* videos were intended as impeachment material. "Defendants' desire to use videotaped depositions for impeachment, however, does not make them necessary to the extent required to make the expenses recoverable as costs." *Engate,*

*Inc.*, 2006 WL 695650 at *2 (citing *Rockett v. Marten Transp., Ltd.*, 2002 WL 54545, *1 (N.D. Ill. Jan.15, 2002) ("If defendants want that impeachment 'edge,' however, they must pay for it themselves.")).  The Court denies the *Hospira* deposition video costs of $12,023.50.

### C.    Trial Transcript Fees

Defendants request $9,816.08 in trial transcript fees and Plaintiff does not dispute this cost.  "Costs associated with daily trial transcripts may be recovered where the trial is lengthy and complex." *Rawal v. United Air Lines, Inc.*, 2012 WL 581146, *2 (N.D. Ill. Feb. 22, 2012) (citations omitted).  Six years of litigation and an appeal on two patents certainly qualifies as a lengthy and complex case.  The Court awards Defendants the full amount they request.

## IV.    Costs for Witnesses Per 28 U.S.C. § 1920(3)

Defendants move for $52,888.36 in costs for witnesses per § 1920(3).  (R. 694 at 20.) They ask for $1,160.00 in attendance fees, $4,762.36 in travel fees (travel, lodging, subsistence), and $46,966.00 in expert fees.  (*Id.*)  Plaintiff requests a reduction of these costs to no more than $15,353.35.  (R. 705 at 21-24.)

### A.    Attendance Fees

Mylan requests $1,160.00 in attendance fees—$40.00 per day for each witness for each day that witness attended trial.  "The costs recoverable for lay witnesses under Section 1920(3) include a witness' attendance at court hearings or depositions, which is $40 per day." *LG Elecs.*, 2011 WL 5008425 at *4; 28 U.S.C. § 1821(b).  *See also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).

Plaintiff only disputes $80.00 of the attendance fee sum, or $40.00 each for two of Dr. Auslander's supposed "trial days."  (R. 705 at 15.)  TMC points out that Dr. Auslander "finished testifying on the fourth day of trial," so he did not attend six days of trial.  (*Id.*)  Defendants

explain, however, that Dr. Auslander, their key technical expert, "was retained for the additional two days of trial in case of recall or rebuttal." (R. 712 at 9.) The Court finds that Dr. Auslander's extra two days are reasonably justified. Mylan is entitled to the full $1,160.00 it requests for attendance fees.

**B.      Travel Fees**

Mylan requests $4,762.36 in travel fees (travel, lodging, subsistence). Under 28 U.S.C. § 1821(c) and (d), the Court may award costs for travel, lodging and subsistence at rates set by the U.S. General Services Administration (GSA). Defendants' calculations are within the GSA FY2014 per diem rates for Chicago, Illinois, and the GSA FY2013 per diem rates for New York City, New York (for Dr. Auslander's deposition), as well as within the approved mileage rates.

Plaintiff only takes issue with costs for Dr. Auslander's extra two "trial days," as discussed in the section above. TMC requests that the Court reduce costs by $411.51 for those two days. (R. 705 at 21-22.) The Court finds that Defendants acted reasonably in keeping Dr. Auslander, their key technical expert witness, in Chicago until the conclusion of the trial. The Court thus awards the full $4,762.36 in travel fees.

**C.      Expert Fees**

Mylan requests $46,966.00 in expert fees for its four expert witnesses. Under § 1920(3), the Court can tax costs for expert deposition attendance as well as deposition preparation, including transcript review. *See, e.g.*, *LG Elecs.*, 2011 WL 5008425 at *5 (finding that costs associated with the time spent preparing for a deposition, including review of an expert's own deposition testimony, are recoverable); *Fox v. Will County*, 2009 WL 723385, *4 (N.D. Ill. Mar.11, 2009 (finding that costs associated with an expert's time spent reviewing deposition testimony, including their own, are recoverable); *Waters v. City of Chicago*, 526 F.Supp.2d 899,

900-01 (N.D. Ill. 2007) (finding that costs associated with the time spent preparing for a deposition are recoverable).

In this District, courts look to the preparation time in relation to the deposition time to determine whether the preparation time was reasonable. *See Chicago United Indus., Ltd. v. City of Chicago*, 2011 WL 4383007, * 2 (N.D. Ill. Sept. 20, 2011) (collecting cases). "These courts have reasonably concluded that a ratio of 3 to 1 preparation to deposition time is reasonable in complex cases[.]" *LG Elecs.*, 2011 WL 5008425 at *5; *Nilssen v. Osram Sylvania, Inc.*, 2007 WL 257711, *5 (N.D. Ill. Jan.23, 2007). Mylan has adjusted Dr. Auslander's time from 27 hours to 21 hours to conform to this ratio. (R. 694 at 24.)

Plaintiff disputes the expert witness fees, arguing that one witness was not called at trial and that the testimony of the other three witnesses was irrelevant or otherwise questionable. (R. 705 at 22-24.) It is not appropriate for TMC to undermine these expert witnesses in a bill of costs motion. Plaintiff had occasion to do so during pre-trial and trial. As for the witness who ultimately was not called, both sides retained experts in a good-faith preparation for trial. The Court will not deny costs based on these arguments.

TMC also points out that it allegedly took Dr. Auslander 9 hours to review his deposition. (R. 705 at 24.) The Court agrees that this is rather high given the other expert's review time: Hofmann's 1.3 hours, Linck's 3.75 hours, and McKeague's 2.75 hours. (R. 694 at 24-25.) Plaintiff suggests cutting the time to 2.5 hours. (R. 705 at 24.) Defendants voluntarily agree to reduce his costs to 2.5 hours, or $1,012.50 at his rate of $405 an hour. (R. 712 at 9.) Mylan requests and receives $12,352.50 for Dr. Auslander.

The Court grants Defendants fees for expert witnesses with the reduction for Dr. Auslander's deposition review hours. The Court therefore awards Mylan $44,333.50 in expert witness fees.

## V. Costs for Copying, Electronic Discovery, and Exemplification Per 28 U.S.C. § 1920(4)

Defendants seek a total of $143,881.50 in copying, electronic discovery, and exemplification costs pursuant to § 1920(4), which allows the Court to tax as costs "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(4); *see also Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008). Specifically, Mylan requests $17,059.48 in copying costs, $67,999.17 in electronic discovery, and $58,822.50 in exemplification costs. Courts interpret § 1920(4) to mean that photocopying charges for discovery and court copies are recoverable, but copying charges made for attorney convenience are not. *See Montanez*, 755 F.3d at 558; *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). "The district court has discretion to determine which copies were necessary." *Montanez*, 755 F.3d at 558. Under § 1920(4), the prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs;" it only needs to provide the best breakdown obtainable from the records. *Northbrook Excess*, 924 F.2d at 643; *see also LG Elecs.*, 2011 WL 5008425 at *6 (citing *Northbrook Excess* with approval).

### A. Copying Costs

Defendants request $17,059.48 in copying costs: $410 for certified copies of the two patents at issue in the case, $1,737.50 for ECF and Court filing copies, and $14,911.98 for exhibits and witness binders. Plaintiff disputes the first and last of these fees.

### 1.    Certified Copies of the Patents

Mylan moves for $410 in costs for certified copies of the two patents at issue in the case. (R. 694 at 27.)  Clearly, the patents were at the heart of the matter and it was reasonable for Defendants to obtain them.  TMC, however, argues that the fee is excessive.  (R. 705 at 25.)  The US Patent & Trademark Office charged $110.00 for copies of the patents, $55.00 for each patent. (R. 695-7 at 2.)  The bill further includes $300.00 for "Services: Obtaining certified copies of the United States Patent Applications…and forwarding."  (*Id*.)  TMC argues the $300.00 charge is not recoverable.

Other courts in this district have allowed for "extra" costs associated with certified copies of patents.  *See, e.g.*, *Intercontinental Great Brands LLC*, 2016 WL 316865 at *4 ("It is common and necessary for parties to a patent dispute to commission notaries public and patent retrieval services to produce copies of prior art."); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 2014 WL 125937, *10 (N.D. Ill. Jan. 14, 2014) (granting CBOE $13,105.45 "for the fees it incurred in obtaining declarations from prior artists and other third parties regarding the authenticity of certain prior art," a broader request than the one at issue here); *Glenayre Elecs., Inc. v. Jackson*, 2003 WL 21947112, *6 (N.D. Ill. Aug. 11, 2003), *aff'd*, 95 F. App'x 344 (Fed. Cir. 2004) ("Obtaining a certified copy of the patent along with its two reexamination certificates was reasonable and necessary.").  The Court agrees with these previous rulings that § 1920(4) allows the taxing of costs related to obtaining a certified copy of a patent as a cost "of making copies of any materials where the copies are necessarily obtained for use in the case."  The Court thus awards Mylan the full $410 for the certified copies of the two patents.

### 2.    ECF and Court Filing Copies

Mylan moves for $1,737.50 in costs for ECF and other Court filings.  TMC does not dispute these costs.  The Court awards the full amount.

### 3.    Exhibits and Witness Binders

Mylan moves for $14,911.98 in costs for exhibits and witness binders.  Mylan created a total of 7 exhibit and binder packets (R. 694 at 28.): one copy each for the Court, law clerk, court reporter, witnesses, and their own trial team; and two copies for opposing counsel, per the Final Pretrial Order which directs each side to give two copies of the trial exhibits to opposing counsel (R. 412 at 6-7.).  TMC argues that Mylan should have only created 4 packets: one copy for the Court, the two copies for TMC, and one copy for Mylan.  (R. 705 at 25-26.)

"Typically, litigation requires one copy for the defendant, one copy for the plaintiff, and one copy for the court."  *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 983 (N.D. Ill. 2003).  However, it is not unusual for courts to tax as costs two sets of photocopies—one for each side's lawyers.  *See Kulumani,* 224 F.3d at 685 ("Two copies of every document filed with the court or provided to opposing counsel makes sense; it is easy to see why each is useful."); *see also Artunduaga*, 2017 WL 1355873 at *4 (citing *Kulumani* with approval).  Additionally, the parties here agreed to give opposing counsel two copies of the exhibits in the Final Pretrial Order.  (R. 412 at 6-7.)  Further, as a bench trial, both the Court and the law clerk needed copies.

The Court finds Mylan's copies of the exhibits and witness binders reasonable.  The Court, therefore, allows Defendants to recoup the costs of all 7 packets, for a total award of $14,911.98.

### B. Electronic Discovery Costs

Defendants request $67,999.17 for electronic discovery. They break these costs down by vendor, requesting $644.58 for work by Barrister Digital Solutions (BDS), $24,922.57 for work by Epiq eDiscovery Solutions (Epiq), and $42,432.02 for work done internally by Perkins Coie staff. (R. 694 at 32.)

Under § 1920(4), "a party may not recover electronic discovery costs unless the party can show that those costs were tantamount to 'making copies' and were "reasonable and necessary.'" *Intercontinental Great Brands LLC*, 2016 WL 316865 at *7. *See also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 11 C 2450, 2015 WL 351244, at *6 (N.D. Ill. Jan. 27, 2015) ("e-discovery costs are recoverable only when they are clear analogues of copying costs"); *see also Massuda v. Panda Express, Inc.*, 2014 WL 148723, *6 (N.D. Ill. Jan. 15, 2014) ("§ 1920(4), for better or worse, is not concerned with attorney efficiency or convenience"). "[T]he Seventh Circuit has not fully addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under 28 U.S.C. § 1920." *Allen v. City of Chicago*, 2016 WL 1070828, *8 (N.D. Ill. Mar. 16, 2016). Courts in this District, however, have concluded that "ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF (if agreed upon by the parties to be the production format), are compensable under § 1920(4)." *Massuda*, 2014 WL 148723 at *6 (collecting cases). *See also Rawal*, 2012 WL 581146 at *2 ("Cost[s] may be awarded under § 1920(4) for electronically scanning and processing documents because the electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper.'"); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (Prevailing parties may recover "costs for converting computer data into a readable format in response to [a]

discovery request.").  In contrast, costs related to the "gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies" and are not compensable.  *Massuda*, 2014 WL 148723 at *6 (quotation omitted).

From Mylan's breakdown, however, it is impossible for the Court to determine the taxable category costs—unless the Court reviews the attached invoices, deciphers the various billing codes, and tallies up costs.  It is not until their response memorandum that Mylan explains what the costs for the following invoice descriptions entail: "PMT – Prepare and Verify Production Sets," "PMT Special Request," "PRD – CUSTOM FORMATTING OF NATIVE FILES," "Special Tasks-Production," "Processing Standard," among other cryptic notations. Further, Mylan does not group the costs by category, but instead only lists them by vendor.

Mylan did, however, substantiate its cost claims with extensive materials, even though it failed to present them in a categorical manner.  That effort, in addition to the complexity and length of this lawsuit, necessitate an award of costs.  *See, e.g*., *LG Elecs*., 2011 WL 5008425 at *8 (awarding half of a party's requested electronic discovery costs despite a lack of detail).  For convenience reasons, the Court will rely on the Plaintiff's breakdown of costs chart.  (R. 705 at 27.)

Plaintiff breaks down Defendants' costs into 8 categories: 1) conversion, 2) Bates stamping, 3) confidentiality stamping, 4) technician time for document production, 5) optical character resolution (OCR), 6) "Data Load – GB," 7) "Special Tasks – Production," and 8) "Processing Standard."  (*Id*.)  Defendants withdraw their request for category 6, reducing its request for costs by $108.  (R. 712 at 13.)  Plaintiff does not dispute the first 3 categories, which according to their calculations totaled $263.99 for BDS and $7,118.81 for Epiq (for a total of $7,382.80).  (R. 705 at 27-28.)  The Court grants these costs.

Of the remaining costs, the Court awards in full the costs of OCR, category 5. "This process is fundamental to ensuring that the digital documents were readable and searchable." *Artunduaga*, 2017 WL 1355873 at *5–6. *See aslo Hecker*, 556 F.3d at 591; *Chicago Bd. Options Exch.*, 2014 WL 125937 at *9 (finding that the prevailing party "may recover all of its conversion costs and associated costs (making files readable through optical character recognition, scanning, creating CD–Roms, and associated activities)."). Defendants calculate that the OCR costs totaled $4,444.09 and the Court awards these costs in full. (R. 705 at 29, n. 6.)

The last three categories of costs (4, 7, 8) all revolve around various document production tasks. Defendants provide supporting invoices and in their response memorandum explain what these various tasks entail. (R. 712 at 12-13.) According to the Court's calculations, these costs amount to $13,632.26. Mylan assures the Court that it "has excluded nontaxable human costs such as searching, organizing, tagging, and analyzing discovery documents" and has attached affidavits to its filings. (R. 712 at 13.) The Court awards Mylan the full amount of electronic discovery "copying" costs.

As for Perkins Coie's internal costs, Mylan requests $42,432.02 for electronic discovery. As Defendants point out, however, their documentation of these tasks includes both taxable and non-taxable costs. (R. 705 at 29-30.) There are multiple entries, for example, regarding "correspondence" "regarding electronic document production." (R. 695-11.) While the Court need not know who performed these tasks, the Court must know how much time Perkins Coie employees spent on the individual tasks in the block entries.

Since Mylan does not break apart the taxable from the non-taxable tasks for Perkins Coie's electronic discovery, the Court will exercise its discretion and award only part of its

requested costs. It is not uncommon for a court to award a percentage of the requested costs, especially where, as here, the party requesting costs has not met its burden of showing that the requested costs were necessarily incurred and reasonable, and further has not appropriately broken down the costs for the Court to parse out the taxable from the non-taxable. *See, e.g.*, *Allen*, 2016 WL 1070828 at *9; *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 979 (N.D. Ill. 2010). The Court will award Mylan half of its requested $42,432.02 for internal Perkins Coie electronic discovery. Defendants will recover $21,216.01 for this cost.

### C. Exemplification Costs

Defendants request $58,822.50 in exemplification costs—$11,760 for technical animation and $47,062.50 for BlueBear Solutions (BBS) trial support activities. (R. 694 at 34.) Mylan provides a generalized, one-page invoice for each cost. (R. 695-12 at 3-4.) TMC argues that Mylan is not entitled to costs by again undermining Mylan's expert Dr. Auslander and the overall theory of the case. (R. 705 at 31-32.) Further, TMC claims that Mylan did not give enough of a description of BBS's activities or explain why exemplification was necessary. (*Id*. at 33-34.)

The case has been litigated to resolution. The Court will not entertain TMC's arguments second-guessing the theory of the case or attempting to challenge experts under *Daubert*. TMC is correct, however, that Mylan must provide an appropriate level of detail for the Court to ascertain taxable costs from its exemplifications claims. While the invoices are quite generalized (R. 695-12 at 3-4.), Mylan explains these costs (R. 712 at 15-16.). Mylan's key expert witness Dr. Auslander's testimony featured important slides and animation illustrating his opinion. (*Id*.) Defendants also explain that BBS assisted with production ($9,525.00), custom graphics ($20,775), deposition video clips and syncing ($9,450.00), and trial technician time ($7,312.50).

(*Id*.) Further, Mylan points out that it has carefully culled the expenses and removed non-taxable items, asking only for $11,760.00 for Dr. Auslander's demonstratives (and not for the additional $10,117.50 associated with slides that were not used for trial) and for $47,062.50 (of the $71,165.05 total cost) for BBS's services. (*Id*. at 15.)

Courts have discretion for awarding costs, including exemplification costs. "Among the factors that the judge might consider in evaluating the necessity of a particular type of exemplification is whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, was the exemplification vital to the presentation of the information, or was it merely a convenience or, worse, an extravagance?" *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428–29 (7th Cir. 2000). Dr. Auslander's demonstratives aided the Court's understanding of difficult and complex patent issues, hashed out over a 6-day bench trial. *Id*. at 428 ("[W]e find no limits inherent in the term 'exemplification' that would permit a court to award costs for the more familiar means of illustration—models, charts, graphs, and the like—but preclude it from compensating a party for an animated reconstruction of an accident, for example, or other types of computer-based, multimedia displays."); *see also Marctec, LLC v. Johnson & Johnson*, 2010 WL 669818, *3 (S.D. Ill. Feb.22, 2010) (providing an effective presentation—including a computer-generated slide show presentation—to aid the fact finder is a reasonable necessity). The Court awards Defendants the full $11,760 that they request for technical animation of Dr. Auslander's testimony.

As for the BBS fees, Mylan breaks these costs into four projects: production, custom graphics, deposition video clips and syncing, and trial technician time. (R. 712 at 15.) TMC does not dispute that "the reproduction, enhancement, enlargement, or other modification of

exhibits for presentation at trial" are taxable costs. (R. 705 at 33.) Plaintiff does dispute Defendants' level of detail in substantiating all of these costs. (*Id*. at 32-34.)

According to the description on the invoice, BBS spent 63.5 hours on "Production – Datab[ase]," which involved "Production related to document processing, renaming, editing, QCing, etc." (R. 695-12 at 4.) This process made the exhibits and other demonstratives more digestible for the Court and sped up the trial process. These costs are not in dispute and are otherwise compensable. The Court awards the full $9,525.00 requested.

BBS spent 138.5 hours on "Graphics," described as "Consultation on graphic concepts, creation of custom graphics." (*Id*.) Plaintiff points out that this item involved a great deal of time and thus cost, and yet Defendants do not provide a more-detailed invoice. Further, the Court agrees that these "consultations" may border on non-taxable costs. "[T]he cases draw the line 'between the costs of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself. The latter is deemed compensable while the former is not.'" *Autozone, Inc. v. Strick*, 2010 WL 2365523, *3 (N.D. Ill. June 9, 2010) (quoting *Cefalu*, 211 F.3d at 427 n. 5). In its discretion, the Court awards $10,387.50, half of the requested "graphics" costs.

Clipping and syncing of deposition videos is a taxable cost. *LG Elecs*., 2011 WL 5008425 at *3 ("Costs associated with digitalization and synchronization of videotaped depositions may also be taxed."); *see also Specht*, 2011 WL 2565666 at *2. The Court awards the full $9,450.00 requested for the 63 hours of work BBS spent on this task.

Trial technician time is also a compensable cost. *LG Elecs.*, 2011 WL 5008425 at *7 (awarding costs after finding that "Whirlpool's technological consultants organized and then presented the exhibits to the Court and jury, which was an efficient, time-saving method of

presenting complex evidence under the circumstances."); *see also Marctec*, 2010 WL 669818 at

*3. The Court awards the full $7,312.50 for BBS's 48.75 hours of in-court trial technician

duties.

**CONCLUSION**

For the foregoing reasons, the Court awards Defendants costs in the amount of

$217,632.88.


**DATED:** October 30, 2017                                    **ENTERED:**

_____
AMY J. ST. EVE
U.S. District Court Judge